# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

TENISHA JIGGETS,

                              Plaintiff,

v.

FOREVER 21, *et al.*,

                             Defendants.

Action No. 08-1473—AW

## MEMORANDUM OPINION

Pending before the Court is Defendant Chris Long's Motion for Summary Judgment (Doc. No. 94), Defendant IPC International Corporation's Motion to Dismiss the Second Amended Complaint (Doc. No. 105), and Plaintiff's Motion for Status Hearing (Doc. No. 105). On December 2, 2010, the Court held a hearing on Defendant Long's Motion for Summary Judgment. The Court **GRANTED** in part and **DENIED** in part Defendant Long's Motion for Summary Judgment. This Memorandum Opinion further articulates the finding made by the Court with respect to Defendant Long's Motion for Summary Judgment. With respect to Plaintiff's Motion for a Status Hearing, the Court will **DENY** this motion as **MOOT**. Defendant IPC's Motion to Dismiss is not yet ripe.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Tenisha Jiggets brings this action on behalf of her minor child, against Defendants Forever 21, Inc., Charles Mall Company Limited Partnership, Defendant Deputy Christopher Long, and IPC International. This case stems out of a series of events that transpired on August 28, 2007 at the St. Charles Town Center Mall in Waldorf, Maryland. Plaintiff alleges that after

paying for her purchases at the Forever 21 store at the mall, she exited the store and was approached by an employee of the store, the store's assistant manager, and a female security officer (an IPC security officer). The employee accused Plaintiff of tearing security tags off of Forever 21 merchandise and stealing items from the store. Jiggets alleges that she was immediately stopped and searched by mall security and Forever 21 personnel after exiting the store, and no stolen merchandise was found on her person at this time or any time thereafter.

According to Plaintiff's Second Amended Complaint, she was allowed to leave after she proved that she did not have any merchandise on her, and she proceeded to walk through the mall. Plaintiff avers that the female security officer that originally stopped her, along with a male officer, Officer Rodriguez, began following her through the mall. According to Plaintiff, Rodriguez told her, "We have to keep an eye on y'all. . . . We already called the police and y'all going to jail tonight." (Doc. No. 85, at 5).

A brief time after leaving the Forever 21 store, Plaintiff avers that Defendant Long confronted her and shouted in the center of the mall's food court, "You need to drop your pants right now!" *Id.* Plaintiff represents that she "refused to pull her pants down in public and in the full view of mall patrons at which time Long and mall security officers forcefully grabbed her then escorted her to a private room against her will." *Id.* In this room, the officers purportedly continued to question Plaintiff about the allegedly stolen clothing from Forever 21.

Plaintiff alleges that when she was in the private room, she refused to answer any further questions about the clothing until her parents arrived at the mall. Defendant Long and IPC Security Officer, Eustanos allegedly "threw Plaintiff against the wall" when she refused to answer any further questions. *Id.* Plaintiff states that Officer Longer slammed her onto the floor causing her face and right shoulder to hit the floor. The reason for her arrest, Plaintiff avers, was

based on the allegation from Forever 21's assistant manager that Plaintiff had removed tags from clothing items, had damaged these items, and had not paid for them. Plaintiff avers that no stolen items were ever found on Plaintiff, and therefore, she was illegally stopped, arrested, and imprisoned.

In an order dated February 19, 2010, the Court granted Plaintiff leave to file a Second Amended Complaint. (Doc. No. 84). Plaintiff filed a Second Amended Complaint on March 3, 2010 (Doc. No. 85), in which she properly named Defendant Charles Mall Limited Partnership as a party and added Defendant IPC International Corporation as a party.

Three counts remain against Defendant Long—Count I (42 U.S.C. 1983-False Arrest); Count II (42 U.S.C. 1983—Excessive Force); Count IV (common law Assault and Battery).

## II. STANDARD OF REVIEW

Summary judgment is only appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must provide evidence that shows a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp. Inc.*, 152 F.3d 326, 330-31

(4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### III. ANALYSIS

#### A. Sovereign Immunity under the 11th Amendment

Defendants allege that the suit against Defendant Long in his official capacity is barred by Eleventh Amendment Sovereign Immunity. In *McMillian v. Monroe County*, 117 S. Ct. 1734, 1737 (1997), the Court held that the determination of whether a sheriff is a representative of the state or the county is "dependant on the definition of the official's functions under relevant state law." Defendant properly recognizes that under Maryland Law, "the Sheriff and Deputy Sheriffs of [a Maryland County] are officials and/or employees of the State of Maryland rather than of [the] County. " *Willey v. Ward*, 197 F.Supp.2d 384, 387 (Md. 2002). Therefore, the Court finds that a suit against Defendant Long in his official capacity cannot stand as such a suit would violate Eleventh Amendment principles of sovereign immunity. Therefore, all claims against Defendant Long in his official capacity are **DISMISSED**.

#### B. Count I-False Arrest

##### i. Terry Stop

Defendant Long alleges that the when he first began his investigation of Jiggets, he "initiated a valid investigatory *Terry* stop based upon reasonable suspicion. (Doc. No. 94-2, at 14). An investigative, or *Terry* stop "is constitutional when it is supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity." *U.S. v. Newton*, No. 10-4101, 2010 WL 3262248, at *2 (4th Cir. Aug. 19, 2010).

Negating Defendant Long's claims, Plaintiff avers that "at no time did Long personally

observe Plaintiff commit a criminal act.  Furthermore, this court should not rely on the hearsay statements asserted in Defendant Long's Affidavit at paragraphs 4, 7, 9, and 10."  (Doc. No. 98, at 13).    Plaintiff continues to contest the justification for Defendant Long's Terry stop by relying on the pleading standards set out in Rule 56 of the Federal Rules of Civil Procedure.  *Id.*  Specifically, Plaintiff states, "Rule 56 states that a "[s]upporting or opposing affidavit must be made on personal knowledge, *set out facts that would be admissible in evidence,* and show that the affiant is competent to testify on the matters stated." *Id.*

However, Plaintiff's arguments contesting her Terry stop based on Rule 56 Pleading standards appear misplaced.  To determine whether an officer, is justified in instituting a *Terry* stop, the Court must determine whether the officer's stop was based on reasonable suspicion that a crime had been committed.  It is well established that,

> Reasonable suspicion requires more than a hunch but less than probable cause and may be based on the collective knowledge of officers involved in an investigation.  In evaluating police conduct in a *Terry* stop, courts must consider the totality of the circumstances , including all information available to an officer and any reasonable inferences to be drawn at the time of the decision to stop a suspect.
>
> *U.S. v. Shakur*, No. 09-4454, 2010 WL 3522001, *1 (4th Cir.  Sept. 9, 2010)
> *Id.*  (internal citations omitted).

On summary judgment, the Court must determine whether there is any dispute of material fact as to whether the Officer had reasonable suspicion to stop the Plaintiff.  The basis for Defendant Long's reasonable suspicion is not required to be based on witness affidavits.  Moreover, the fact that hearsay was the basis on which Defendant Long developed reasonable suspicion does not make it inadmissible for the Court's determination of whether reasonable suspicion existed.  "[T]he fact that hearsay evidence would not be admissible at trial to prove guilt does not make it unusable" as a source of reasonable suspicion.  *Cortez v. McCauley,* 478 F.3d 1108, 1118 (10th Cir.2007) (en banc).   Reasonable suspicion can be based upon

information from an informant if the tip bears sufficient indicia of reliability. *U.S. v. Barnes*, 506 F.3d 58 (1st Cir. 2007). Moreover, reasonable suspicion can be imputed to the officer conducting a search if he acts in accordance with the direction of another officer who has reasonable suspicion. *Id.*

Assessing the facts in the light most favorable to the Plaintiff, it appears that there is no dispute of material fact as to whether Officer Long had reasonable suspicion to institute a *Terry* stop on the Plaintiff. In Defendant's Motion for Summary Judgment, he states that he received a request for assistance from mall security concerning a subject who had become disorderly when approached by employees of the Forever 21 store. Security Office Rodriguez told Defendant that Jiggets had torn security tags from clothing at Forever 21 and had walked away when approached by Assistant Manager Kelcei McElvine *(*Doc. No. 94-2, at 4). Using this information, Defendant Long contends that he followed Jiggets through the food court of the mall, telling her to stop. Jiggets refused to stop, according to Defendant Long, and Defendant Long grabbed her left arm to detain her. "While 'reasonable suspicion' is a less demanding standard than probable cause, there must be at least a minimal level of objective justification for the stop." *Illinois v. Wardlow*, 528 U.S. 119, 119 (2000). These facts provide adequate foundation to support the proposition that Officer Long had an reasonable articulable suspicion of criminal activity, mainly that Jiggets had torn tags off of clothing at Forever 21.

### ii. Probable Cause to Arrest for Theft and Destruction of Property

Probable cause is a higher standard than reasonable suspicion. *United States v. Brown,* 366 F.3d 456, 458 (7th Cir.2004). Plaintiff alleges that Defendant Long lacked probable cause to arrest her. Defendant Long, however, alleged that he did have probable cause to believe that the crime of theft had been committed by Jiggets based off of the information that he received from mall security officers. The law is clearly established that police officers can institute

warrantless arrests if there is probable cause for the arresting officer to believe that a felony has been committed by a suspect. "A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (citing *Atwater v. Lago Vista,* 532 U.S. 318, 354 (2001) (stating that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.")).

Defendant Long avers that probable cause to arrest Jiggets arose when "security officers told [him] that [Jiggets] had been seen tearing security tags from items of clothing in the store and that the assistant manager did want to press charges." (Doc. No. 94-2, at 18). However, Plaintiff avers that Officer Long lacked probable cause to detain her. Plaintiff contends that "no purported misdemeanor was committed by Plaintiff *in the presence of* Office Long." (Doc. No. 98, at 17) (emphasis in original).

At this stage in the litigation, several facts are in dispute as to whether Officer Long had probable cause to arrest Plaintiff. Defendant Long indicated that Plaintiff was charged with malicious destruction of property, resisting arrest, and theft of property having a value of less than $500.00. *Id.* at 8.

Defendant Long offers the following factual background to support his basis for probable cause to arrest Jiggets. Defendant alleges, that on the day in question, he received a request for assistance from mall security regarding Jiggets who had supposedly become disorderly when she was approached by mall security and employees. Defendant Long alleges that he met Security Officer Dina Rodriguez at the top of the escalator in the mall's food court. Defendant Long avers that Officer Rodriguez who was walking behind Jiggets when Defendant Long arrived.

Furthermore, Defendant Long avers that "Officer Rodriguez told [him] that Jiggets had torn security tags from clothing at Forever 21and had walked away when approached by Assistant Manager Kelcei McElvine." (Doc. No. 94-2, at 4). At this point, Security Officer Christopher Eustanos was also present. Officer Long also asked the security officers, Dina Rodriguez and Christopher Eustanos, if the store manager had any proof of whether Jiggets had committed a crime in the store, and Long alleges that the security officers told him that Jiggets had been seen tearing security tags from items of clothing in the store.

Summarizing his basis for probable cause to arrest Jiggets for theft and destruction of property, Defendant Long alleges,

> The specific, detailed information provided to Deputy Long by the security officers after Jiggets walked away from her initial encounter with Deputy Long provided ample probable cause to believe that Jiggets had stolen merchandise from Forever 21 and was attempting to exit mall property with it. After Jiggets walked away from him the first time, the security officers told Deputy Long that she had been seen tearing security tags from items of clothing in the store and that the assistant manager did not want to press charges, [sic] This information provided probable cause to arrest [Jiggets].

(Doc. No. 94-2, at 18).

Plaintiff's version of the facts vastly differ from Defendant Long's, especially with respect to the events that transpired before her encounter with Deferent Long. Plaintiff avers that when she was initially left the Forever 21 store, she was approached by two mall security officers (Officers Dina Rodriguez and Christopher Eustanos) and a Forever 21 employee. According to Defendant Long, these same security officers told him that Plaintiff committed a crime in the store. Plaintiff alleges that when she was initially stopped by these officers upon exiting the store, in the presence of the security officers, she "showed store staff that she hadn't stolen anything by lifting her jeans at the top waistline area and bottom." (Doc. No. 98, at 4). Plaintiff alleges that no stolen merchandise was found on her at the time that she was initially

stopped by security officers or at any later time. Defendant Long concedes this fact. Moreover, Plaintiff contests Defendant Long's allegation that Jiggets became "disorderly" when approached by store employees. To the contrary, Plaintiff alleges that she complied with the security officers' request to stop and return to the store after she initially exited the store.

At this point, there is no dispute over the fact that Defendant Long did not personally witness Jiggets steal any property from Forever 21. Moreover, there is no dispute that no stolen merchandise was ever recovered or found on Jiggets. As it stands, there is a genuine factual dispute as to whether Defendant Long had probable cause to arrest Jiggets in light of the fact that Jiggets allegedly showed the same officers who supplied Defendant with probable cause to arrest for theft that she had no stolen merchandise on her immediately after she exited the store. While the Court recognizes that an arrest for a misdemeanor committed outside of the officer's presence is not absolutely inconsistent with the Fourth Amendment, at this juncture, the facts indicate that there is a factual dispute as to whether probable cause existed to arrest Jiggets for the crime of theft.

### iii. Probable Cause to Arrest for Resisting Arrest

Discussing the facts leading up to the actual arrest of Jiggets, Defendant Long asserts after he spoke with the mall security officers about Jigget's alleged theft and destruction of property, he walked towards Jiggets who was proceeding to the exit through the mall's food court. Deputy Long purportedly told her to stop and talk to him, and Jiggets supposedly refused and continued to walk away. In the midst of this exchange, according to Defendant Long, Jiggets was on her cell phone speaking to one of her parents. Defendant Long avers that after Jiggets refused to stop, he "used his right hand to take hold of Jiggets' left arm and told her to come with him, that she was being detained while he investigated further." (Doc. No. 94-2, at 5). All the while, Jiggets was still on her cell phone. Deputy Long allegedly directed her to get

off of her cell phone, and when she refused, Deputy Long closed the phone and directed Jiggets to place her hands behind her back. Officer Long alleges that "instead of complying, Jiggets pulled her right hand away and swung her left hand at Deputy Long." *Id.* at 6. Moreover, Deputy Long alleges that he asked Security Officer Rodriguez to handcuff Jiggets while he held her right arm. Defendant Long avers that as she was being handcuffed, Jiggets "pulled to the left and attempted to kick Officer Eustanos." *Id.* Deputy Long also states that he ordered Jiggets to get to the floor after kicking Eustanos, and she did not comply. According to Defendant Long, "Jiggets continued to struggle until she was fully handcuffed." *Id.* at 7.

Plaintiff, on the other hand, alleges that she "never attempted to strike Officer Long." (Doc. No. 98, at 9). Furthermore, Plaintiff indicates that "she offered no significant resistance to Defendant Long when he decided to arrest her." *Id.* at 18.

At this point, the facts as to whether Defendant had probable cause to arrest for any crime committed by Jiggets is genuinely in dispute. Probable cause is generally a question for the jury. *Id.*, citing *McKenzie v. Lamb*, 738 F.2d 1005, 1007 (9th Cir.1984). *See also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir 1996)(asserting, "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." (internal citations omitted)).

As there is a genuine dispute of material fact as to whether Defendant Long had probable cause to arrest Jiggets for any crime, summary judgment is **DENIED** to Defendant as to Count I for False Arrest in violation of 42 U.S.C. Section 1983.

### C. Reasonableness of the Force Used During the Arrest

As an additional basis for her §1983 claim, Jiggets claims that Officer Long used unreasonable force against her during her arrest. When determining whether the force used

against a suspect is excessive, the Supreme Court has explained the analytical framework that a court must use to evaluate an excessive force claim, stating,

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

According to Plaintiff, Defendant Long "pushed her flat on [her] stomach. [Her] face hit first . . . Then, he put his knee in [her] back, and they handcuffed [her]." Moreover, Plaintiff alleges that in the process of handcuffing her, Defendant Long "grabbed her left arm and twisted it behind her back, then threw her against the wall, and then slammed her to the floor face first with her hands behind her back." (Doc. No. 98, at 18). Plaintiff avers that at the time of the incident in question, she was a "scrawny, 14 year old girl, 5'2, weighing about 100 pounds[.]" (Doc. No. 98, at 18). Plaintiff avers that she "offered no significant resistance to Defendant Long when he decided to arrest her." *Id.* Moreover, Plaintiff avers that she "never attempted to strike Officer Long."

Defendant Long, on the other hand, contends that "force was only used when Jiggets refused to put her hands behind her back and physically resisted after she had been told she was under arrest." (Doc. No. 94-2, at 20). Defendants contend that when Jiggets refused to be handcuffed, Defendant Long put Jiggets right arm behind her back and turned Jiggets toward the wall." *Id.* Additionally, Defendant Long states that "when Jiggets refused to go to the floor as ordered, Deputy Long applied the armbar force to push her to the floor." *Id.* Defendant Long purports that the armbar force is a standard police technique.

The facts indicate that there is a genuine dispute of material fact as to whether the amount of force was reasonable under the circumstances. Therefore, the Court will **DENY** summary judgment as to Count II for excessive force in violation of Section 1983.

### a. Qualified Immunity on Claim Brought under §1983

Plaintiffs correctly note that "[o]nce a genuine issue of material fact is found to exist, the defense of qualified immunity shielding the defendant from trial must be denied . . . .[W]here there are issues of material fact surrounding [the conduct of either an arrestee or an arresting officer] it is impossible for the court to determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law." *Gainor v. Rogers*, 973 F.2d 1379, 1385 (8th Cir. 1992). Because there is a genuine issue of material fact surrounding whether Defendant Long had probable cause to arrest Plaintiff and whether Defendant Long used excessive force on Plaintiff during the arrest, Defendant Long is not entitled to summary judgment as to the qualified immunity defense.

### D. Count IV-Assault and Battery

Plaintiff brings one claim for common law assault and battery against Defendant Long. However, Defendant Long alleges that Jiggets has not complied with the notice requirement of the Maryland Tort Claims Act, a condition precedent to triggering the waiver of sovereign immunity. To comply with the notice statute of the Maryland Tort Claims Act (MTCA), a plaintiff must submit a written claim to the Treasurer or a designee of the Treasurer within one year after the injury to person or property that is the basis of the claim." Md. Code Ann. State Govt. §12-106 (b)(1). The Affidavit of Laura Mcweeney established that Plaintiff failed to meet the notice requirement of the MTCA (Def's Exhibit 6), demonstrating that that there is no genuine dispute of material fact on this issue. Furthermore, during the hearing held on the instant motion, Plaintiff conceded that the notice requirement of the MTCA had not been met. Therefore, the Court will **GRANT** Defendant Long's Motion for summary judgment as to Count IV of Plaintiff's complaint and this claim will be **DISMISSED** against Defendant Long.

## CONCLUSION

For the reasons articulated above, the Court will **GRANT** in part and **DENY** in part Defendant Long's Motion for Summary Judgment. An order consistent with this Memorandum Opinion will follow.

   December 13, 2010                                                     /s/      
        Date                                                           Alexander Williams, Jr.
                                                                            United States District Judge